FILED

August 16, 2017

TN COURT OF
WORKERS' COMPENSATION
CLAIMS

Time 8:02 AM



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT MURFREESBORO

| | | |
|---|---|---|
| **LONNIE PERRY, JR.,** | ) | **Docket No. 2017-05-0177** |
| **Employee,** | ) | |
| **v.** | ) | |
| **GOLF CARTS FORE LESS,** | ) | **State File No. 85136-2016** |
| **Employer,** | ) | |
| **And** | ) | |
| **ACCIDENT FUND,** | ) | **Judge Dale Tipps** |
| **Insurance Carrier.** | ) | |
| | ) | |

## EXPEDITED HEARING ORDER GRANTING BENEFITS

This matter came before the undersigned workers' compensation judge on August 3, 2017, for an Expedited Hearing. The present focus of this case is whether Mr. Perry is entitled to medical and temporary disability benefits for his alleged right shoulder injury. The central legal issue is whether Mr. Perry is likely to establish at a hearing on the merits that he suffered an injury arising primarily out of and in the course and scope of his employment. For the reasons set forth below, the Court holds Mr. Perry is likely to meet this burden and is entitled to medical benefits, but not temporary disability benefits, at this time.

### History of Claim

Mr. Perry testified that he felt a "pop" in his right shoulder while lifting a golf-cart battery at work on September 12, 2017. He reported the injury to John Phillips, the owner of Golf Carts Fore Less (GCFL), and as his symptoms worsened over the following days, he repeatedly requested medical treatment. Mr. Phillips initially told him he should seek treatment under his wife's medical insurance. GCFL did not provide a panel of physicians until November 14. Mr. Perry selected Dr. Austin Adams from the panel.

Mr. Phillips' version of the above events was quite different. Regarding the injury, he admitted Mr. Perry told him about hurting his shoulder on September 12.

1

However, Mr. Phillips claimed he told Mr. Perry to see a doctor if necessary and that GCFL had workers' compensation coverage. However, Mr. Perry never claimed a work injury or requested treatment until after he was fired. Further, Mr. Phillips said he never refused to provide workers' compensation benefits and reported the claim to his carrier sometime in mid-October.

As to the treatment Mr. Perry received for his injury, Dr. Adams first saw him on November 18. He diagnosed shoulder strain and placed Mr. Perry on temporary physical restrictions. At a later visit on November 29, Dr. Adams referred him to an orthopedist.

GCFL provided a panel and then, at Mr. Perry's request, provided a second panel that included Dr. Russell McKissick, who had previously treated Mr. Perry for other problems. GCFL scheduled a visit with Dr. McKissick but denied the claim before the appointment because it was "unable to verify a work related injury to his right shoulder."

Following the denial, Mr. Perry sought treatment on his own with Dr. McKissick. He diagnosed a rotator cuff and biceps tendon tear and arthroscopically repaired them on January 31, 2017. Dr. McKissick's most recent note of July 19 stated that Mr. Perry continued to suffer pain and stiffness. Dr. McKissick also noted "he may have an overlying radicular component as well" and that Mr. Perry was seeing a pain management specialist, who ordered a cervical MRI. Mr. Perry continues to see Dr. McKissick. Mr. Perry submitted proof showing that his out-of-pocket expenses for treatment totaled $3,755.82.

In response to an inquiry about causation, Dr. McKissick stated in a letter that Mr. Perry's rotator cuff and biceps tendon injuries were "greater than 51% due to the work-related incident."

A main point of contention during the hearing was the circumstances under which Mr. Perry's employment at GCFL ended on October 24. Much of the dispute involved a GCFL golf cart that Mr. Perry sold.[1] Mr. Perry said Mr. Phillips authorized him to take the cart home to try to sell it. He testified this was a fairly common practice and he sold the cart for $2,750.00 by displaying it in his neighbor's yard near the highway. Mr. Perry then withheld the money from the sale until Mr. Phillips reported his claim. Mr. Phillips proceeded to accuse him of stealing the cart and terminated him, saying that nobody at the shop wanted Mr. Perry to return. Mr. Perry denied stealing the cart and believed his work injury was part of the reason for his termination. He stated he gave Mr. Phillips the money from the sale of the cart after he confirmed that Mr. Phillips had reported Mr. Perry's work injury to the Bureau.

---

[1] The parties also presented testimony and other evidence about a motorcycle that Mr. Perry took in trade on another golf cart sale. Mr. Phillips said he allowed Mr. Perry to take the motorcycle home to try to sell it, but Mr. Perry never gave him the money from that sale. Mr. Perry testified he sold the motorcycle and gave Mr. Phillips the proceeds. There is no allegation that the motorcycle was related in any way to Mr. Perry's termination.

2

Mr. Phillips testified that Mr. Perry had no permission to take the cart home to sell. He discovered the missing cart and asked Mr. Perry about it. Mr. Perry told him someone stole the cart from the store. After Mr. Phillips confronted him with the result of his investigation – that Mr. Perry had taken the cart and sold it out of his neighbor's yard – Mr. Perry met him the next morning and gave him the $2,750. At that point, Mr. Perry said, "everyone out there is going to think I'm a thief." He also told Mr. Phillips that he was going to the doctor and would file a workers' compensation claim.

Mr. Perry contended no actual dispute exists regarding the cause of his shoulder injury. He sought medical treatment with Dr. McKissick, including reimbursement of his out-of-pocket expenses. He also sought temporary disability benefits from November 18, 2016, to the present, based upon GCFL's failure to return him to work within Dr. McKissick's temporary restrictions. Finally, Mr. Perry requested attorney fees and a penalty for unpaid temporary disability benefits.

GCFL countered that Mr. Perry is not entitled to workers' compensation benefits. It contended he failed to meet his burden of proving an injury arising in the course of his employment, arguing that he worked without any reported problems until after lost his job. It suggested that, if Mr. Perry were telling the truth about the seriousness of his injury, he would have contacted the Bureau much earlier than he actually did.

### Findings of Fact and Conclusions of Law

The following legal principles govern this case. Because this case is in a posture of an Expedited Hearing, Mr. Perry need not prove every element of his claim by a preponderance of the evidence in order to obtain relief. Instead, he must come forward with sufficient evidence from which this Court might determine he is likely to prevail at a hearing on the merits. *See* Tenn. Code Ann. § 50-6-239(d)(1) (2016); *McCord v. Advantage Human Resourcing*, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Mar. 27, 2015).

*Compensability*

To prove a compensable injury, Mr. Perry must show that his alleged injury arose primarily out of and in the course and scope of his employment. To do so, he must show his injury primarily arose out of a work-related incident, or specific set of incidents, identifiable by time and place of occurrence. Further, he must show, "to a reasonable degree of medical certainty that it contributed more than fifty percent (50%) in causing the . . . disablement or need for medical treatment, considering all causes." "Shown to a reasonable degree of medical certainty" means that, in the opinion of the treating physician, it is more likely than not considering all causes as opposed to speculation or possibility. *See* Tenn. Code Ann. § 50-6-102(14) (2016).

3

Applying these principles to the facts of this case, the Court first notes that, while GCFL questioned the details of Mr. Perry's description of the accident, it presented no testimony or other proof to contradict his claim that he suffered a shoulder injury at work on September 12, 2016. In fact, Mr. Phillips confirmed that Mr. Perry reported the injury to him. Thus, there is no genuine dispute that Mr. Perry established a specific incident, identifiable by time and place. The question to be resolved, therefore, is whether he appears likely to prove at a hearing on the merits that his work was the primary cause of the injury. The Court finds that Mr. Perry is likely to meet this burden.

The only medical proof submitted regarding causation was Dr. McKissick's opinion that Mr. Perry's injury was "greater than 51% due to the work-related incident." GCFL attacked Dr. McKissick's opinion on the basis that the injury history Mr. Perry gave him was untrustworthy. This attack fails for the same reason as before – GCFL presented no actual proof that Mr. Perry's history was inaccurate or untruthful. Absent any evidence to the contrary, Mr. Perry appears likely to prevail at a hearing on the merits that his workplace accident was the primary cause of his injury.

*Medical Benefits*

Having found Mr. Perry is likely to prevail on causation at a hearing on the merits, the Court must address his request for medical benefits. Under the Workers' Compensation Law, "the employer or the employer's agent shall furnish, free of charge to the employee, such medical and surgical treatment . . . made reasonably necessary by accident[.]" Tenn. Code Ann. § 50-6-204(a)(1)(A) (2016). Employers are also required to offer a panel of physicians "from which the injured employee shall select one (1) to be the treating physician." *See* Tenn. Code Ann. § 50-6-204(a)(3)(A)(i). Although GCFL provided a panel of physicians and set an appointment with Dr. McKissick, it denied Mr. Perry's claim before he could see the doctor for authorized care. GCFL must therefore provide reasonable and necessary treatment of Mr. Perry's compensable injury with Dr. McKissick designated as the authorized treating physician.

Further, GCFL's failure to provide treatment caused Mr. Perry to incur out-of-pocket expenses for his health insurance deductible and payment of medical bills. He presented uncontroverted evidence during the hearing that his personal expenses totaled $3,755.82. However, he presented no medical evidence that these expenses were reasonable and necessary. Thus, although Mr. Perry is undoubtedly entitled to reimbursement for some amount out-of-pocket medical expenses arising out of reasonable and necessary treatment with Dr. McKissick, the Court cannot order payment of these expenses at this time.

Mr. Perry also seeks payment of temporary disability benefits. An injured worker is eligible for temporary total disability (TTD) benefits if: (1) the worker became disabled from working due to a compensable injury; (2) there is a causal connection between the injury and the inability to work; and (3) the worker established the duration of the period of disability. *Jones v. Crencor Leasing and Sales*, TN Wrk. Comp. App. Bd. LEXIS 48, at *7 (Dec. 11, 2015). None of the submitted medical records states that either of Mr. Perry's physicians took him completely off work. Without evidence that he was "disabled from working," Mr. Perry has not proven he is likely to succeed on a claim for TTD benefits.

The question then becomes whether Mr. Perry is entitled to temporary partial disability (TPD) benefits. This is a category of vocational disability distinct from temporary total disability and is available when the temporary disability is not total. *See* Tenn. Code Ann. § 50-6-207(2) (2016). Specifically, "[t]emporary partial disability refers to the time, if any, during which the injured employee is able to resume some gainful employment but has not reached maximum recovery." *Williams v. Saturn Corp.*, 2005 Tenn. LEXIS 1032, at *6 (Tenn. Workers' Comp. Panel Nov. 15, 2005)). *See also Mace v. Express Services, Inc.,* 2015 TN Wrk. Comp. App. Bd. LEXIS 49, at *8 (Dec. 11, 2015). Thus, the injured worker may be eligible for TPD benefits in circumstances where the treating physician has released the injured worker to return to work with temporary restrictions and the employer fails to return the employee to work within the restrictions. *Id*.

No one disputes that Mr. Perry stopped working for GCFL even before he saw the doctors who assigned temporary physical restrictions. However, the circumstances of GCFL's failure to offer light duty requires additional analysis. First, the parties were unclear on whether Mr. Perry quit or GCFL terminated him. Mr. Perry testified that Mr. Phillips never really said he was fired. Instead, Mr. Perry just told Mr. Phillips to "call me if you want me to come back," and Mr. Phillips never called. Mr. Phillips, on the other hand, initially said Mr. Perry quit after Mr. Phillips confronted him about the stolen cart. He later admitted he may have fired Mr. Perry or that the decision was mutual. Similarly, he variously ascribed to both Mr. Perry and himself the statement that Mr. Perry would have a hard time returning to the workplace. After careful review of all the evidence, the Court concludes that, even if Mr. Phillips never actually said "you're fired," his intent was to terminate Mr. Perry's employment and not allow him to return to the workplace.

Absent any other considerations, this finding would normally entitle Mr. Perry to TPD benefits. However, an employee's termination for misconduct may relieve an employer of the obligation to pay temporary disability benefits if the reason for termination qualifies as misconduct under ordinary workplace rules. *See Jones, supra,* at

*8-9. Noting that theft of an employer's property is inherently a violation of ordinary workplace rules, the Court must therefore determine whether Mr. Perry actually stole the cart and whether GCFL fired him for that reason.

The proof on this issue was essentially a swearing contest between Mr. Perry and Mr. Phillips.[2] Both of them provided believable explanations for everything from text messages regarding the sale of the golf cart, the sale of a motorcycle owned by GCFL, and a prior dispute over an allegation that Mr. Perry pocketed proceeds from a cash sale to a GCFL customer. Both parties' stories also had unexplained weaknesses, but none so significant as to completely discount one version or the other. In other words, the Court cannot credit either version without additional information. Although Mr. Perry and Mr. Phillips both referenced potential witnesses, such as Mr. Phillips' son or the neighbor who sold the cart, neither of them presented affidavits or live testimony from them.

Faced with this evidentiary stalemate, the Court notes that Mr. Perry bears the burden of proving he is likely to prevail on this issue at a hearing on the merits. The Court is unable to find he is likely do so at this time and must deny his request for temporary disability benefits. This denial eliminates the need to consider Mr. Perry's request for a penalty based on unpaid temporary disability benefits at this time.

*Attorney Fees*

Mr. Perry seeks attorney fees pursuant to Tennessee Code Annotated section 50-6-226(d)(1)(B) (2016). This section allows an award of fees and reasonable costs incurred when an employer:

> Wrongfully denies a claim by filing a timely notice of denial, or fails to timely initiate any of the benefits to which the employee is entitled under this chapter . . . if the workers' compensation judge makes a finding that such benefits were owed at an expedited hearing or compensation hearing.

The Appeals Board recently held that this provision does not require determination of fee requests "at an interlocutory stage of the case," although it suggested such a determination might be appropriate in some cases. It noted that "each case must be evaluated based on the particular circumstances presented," although it provided no guidance as to the circumstances that should be considered. *See Andrews v. Yates Services, LLC*, 2017 TN Wrk. Comp. App. Bd. LEXIS 35, at *7-8 (May 23, 2017).

Mr. Perry argued that the purpose of section 226(d)(1)(B) is to encourage attorneys to accept more workers' compensation cases and thus provide more

---

[2] Mr. Perry's wife provided helpful testimony on other issues, but she did not know any of the details regarding her husband's termination.

representation for injured employees.  He suggested that this purpose would be frustrated if attorneys must wait until the conclusion of a case before they can request and receive these additional fees.   While the Court agrees with the general substance of this argument, it notes that he presented no evidence of why the "particular circumstances" of this case would qualify for an immediate award of fees under *Andrews*.  Further, the somewhat unsettled issues of credibility in this case suggest it would not be an ideal example of facts supporting this type of interlocutory award.   Based on these considerations, the Court must deny Mr. Perry's request for fees at this time.

**IT IS, THEREFORE, ORDERED** as follows:

1. Golf Carts Fore Less shall provide Mr. Perry with medical treatment made reasonably necessary by his September 12, 2016 injury in accordance with Tennessee Code Annotated section 50-6-204.   The Court designates Dr. McKissick as the authorized treating physician.

2. Mr. Perry's requests for temporary disability benefits, the twenty-five percent penalty, and attorney fees are denied at this time.

3. This matter is set for a Scheduling Hearing on November 28, 2017, at 9:00 a.m. You must call 615-741-2112 or toll free at 855-874-0473 to participate.  Failure to call in may result in a determination of the issues without your further participation.  All conferences are set using Central Time (CT).

4. **Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3) (2016).   The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh business day after entry of this Order.   Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance.**

5. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email WCCompliance.Program@tn.gov.

**ENTERED this the 16th day of August, 2017.**

_____
**Judge Dale Tipps**
**Court of Workers' Compensation Claims**


**APPENDIX**

Exhibits:
1. Agreed Exhibit List
2. Supplement to Agreed Exhibit List
3. Affidavit of Lonnie Perry
4. First Report of Injury
5. Notice of Denial
6. Choice of Physician form signed November 14, 2016
7. Unsigned Choice of Physician Form
8. March 20, 2017 letter from GCFL counsel to Bureau
9. Affidavit of Steven Waldron
10. Copies of paychecks
11. Photographs of texts from Mr. Phillips to Mr. Perry
12. Anthem deductible printout
13. Anthem Claim Recap
14. Cardinal Health Transaction Details
15. Anthem Explanation of Benefits

Technical record:
1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Request for Expedited Hearing

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on this the 16th day of August, 2017.

| Name | Certified Mail | Email | Email Address |
|---|---|---|---|
| R. Steven Waldron | | x | **arlenesmith@comcast.net** |
| Gordon Aulgur | | x | **Gordon.aulgur@accidentfund.com** |

_____
**Penny Shrum, Clerk of Court**
**Court of Workers' Compensation Claims**
**WC.CourtClerk@tn.gov**

9